**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 18-cv-00757-RM-KLM

COURTNEY GRUBER,

      Plaintiff,

v.

REGIS CORP., a Minnesota corporation,

      Defendant.

---

**ORDER**

---

This matter is before the Court on the parties' cross motions[1] for summary judgment

(ECF Nos. 23, 27) on claims arising from Plaintiff Courtney Gruber's ("Ms. Gruber") former

employment with Defendant Regis Corporation ("Regis"). Ms. Gruber alleges Regis violated the

Colorado Wage Claim Act ("CWCA") and breached a letter agreement by failing to make certain

payments owed to her. The cross motions are fully briefed and ripe for resolution. The Court

has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

**I.     FACTUAL AND PROCEDURAL BACKGROUND[2]**

Regis was in the business of owning and operating hair salons. Effective September 7,

2016, Regis hired Ms. Gruber as its Vice-President of Premium Operations. Ms. Gruber

---

[1] The answer to Plaintiff's apparent question of why Defendant filed a motion for summary judgment rather than "simply respond" to her motion for summary judgment (ECF No. 29, p. 1) is simple – it is because Defendant also seeks summary judgment in its favor, which Defendant cannot obtain by simply responding to Plaintiff's motion. The issue is whether either party has shown summary judgment may be had.
[2] It did not go without notice to the Court that on more than one occasion the parties' SUMFs were not supported by or did not accurately reflect the documents upon which they rely.

received an annual salary of $220,000, was eligible for bonuses, and received a $50,000.00 grant of equity (Restricted Stock Units or "RSUs") in Regis which would vest in equal annual amounts over a three-year period (August 19, 2016 to August 19, 2019) if she was continuously employed during that three-year period. While Ms. Gruber was employed by Regis, she signed the Code of Business Conduct and Ethics which provided, among other things, that while employed it was a conflict of interest for her to compete with Regis and she was required to protect confidential information. (ECF No. 28-4.)

On October 1, 2017, Regis sold its mall-based salon business to The Beautiful Group ("TBG"). At that time, Ms. Gruber reported to Russell Testa, Regis's Vice President of Human Resources and Premium Operations. Prior to the closing of the sale to TBG, Mr. Testa and Ms. Gruber discussed entering into an agreement that would induce Ms. Gruber to continue to work for Regis and/or TBG during the transition of the mall-based salon business to TBG. A letter agreement (the "Letter Agreement") dated November 10, 2017 was prepared and thereafter signed by the parties. That Letter Agreement defines the "Closing" as October 1, 2017 and provides, in relevant part, as follows:

> "This letter agreement is intended to memorialize the agreement between you and Regis Corporation … regarding your potential severance during the post-Closing transition period."
>
> ***
>
> 2. "If, at any time up to six months after Closing [April 30, 2018], TBG makes you a job offer and you accept the offer, Regis will accelerate the vesting of your then-unvested Regis equity awards, in accordance with Regis' policy for Transferred Employees, in exchange for a standard and customary release (the 'Acceleration')."

3. "If TBG does not make you a job offer by the six-month anniversary of Closing, Regis will use its reasonable best efforts to place you in another position with Regis that is acceptable to both you and Regis. If Regis is unable to do so, Regis will pay you severance equal to six months of your salary and the Acceleration in exchange for a standard and customary release."

4. "Furthermore, if TBG makes you a job offer and you decline, Regis will pay you severance equal to six months of your salary and the Acceleration. If you are hired by TBG and then terminated without cause at any time prior to October 1, 2018, Regis will pay you severance equal to six months of your salary in exchange for a standard and customary release."

5. This Letter Agreement has no force and effect after October 1, 2018. … It replaces all prior agreements between you and Regis regarding post-Closing severance and equity acceleration.

(ECF No. 1-1.)  Prior to the parties' signing of the Letter Agreement, there were no specific discussions between the parties about what the term "job offer" or "customary and standard release" meant.

Following the closing, Ms. Gruber worked under Michael Reinstein of TBG but remained a Regis employee and continued to receive her regular salary.  In late December 2017, Mr. Reinstein asked Ms. Gruber if she was interested in staying with TBG.  Ms. Gruber was not sure and told Mr. Testa about Mr. Reinstein's inquiry.  After consideration of the matter, Ms. Gruber told TBG she was not interested in working for them and, a few days later, Mr. Reinstein announced Ms. Gruber's departure from TBG.  Effective January 1, 2018, Ms. Gruber was no longer actively working with TBG.

Ms. Gruber used her accrued vacation and took the month of January 2018 off from Regis.  Regis terminated Ms. Gruber's employment effective January 31, 2018, with the stated reason of "involuntary due to TBG acquisition."  Ms. Gruber would not accept any job at Regis

that would not have involved running an entire division, but Regis did not have any positions that met her job requirements.

At some point in time, Regis presented Ms. Gruber with a "Separation and Non-Disparagement Agreement and General Release" (the "Separation Agreement") which contained, among other things, a "General Release," confidentiality provision, and non-compete and non-solicitation provisions. (ECF No. 24-8.) Ms. Gruber did not object to paragraph 3 in the Separation Agreement titled "General Release" but would not sign the Separation Agreement as presented. Without a signed Separation Agreement, Regis would not make any payments to Ms. Gruber or accelerate her equity in Regis. Ms. Gruber's lawsuit followed.

Ms. Gruber's complaint raises two claims based on allegations that she is entitled to (1) two months of salary under the six-month term of the Letter Agreement; (2) acceleration of 4,822 units[3] of Regis equity; and (3) $110,000 in severance. As the complaint currently stands, however,[4] the first claim is under the CWCA and seeks, as "wages or compensation," the 4,822 units of Regis equity. The second claim is for breach of the Letter Agreement seeking three months' salary, the 4,822 units of Regis equity, and $110,000 in severance. On the second claim, the parties' disputes are (1) whether the Letter Agreement is enforceable; (2) whether Regis was required to employ Ms. Gruber for six months; (3) whether Ms. Gruber received a "job offer"; and (4) whether a "standard and customary release" requires Ms. Gruber to sign a document containing more than the "General Release" set forth in the Separation Agreement.

---

[3] Ms. Gruber originally sought 8,900 units but the parties stipulated to dismiss her claims as it related to 4,078 of those 8,900 units, leaving 4,822 units at issue. (ECF Nos. 39, 40.)

[4] Mr. Gruber's CWCA claim also sought the alleged remaining salary for the alleged six-month term of the Letter Agreement but that portion of the claim was dismissed by the Court upon the Magistrate Judge's recommendation. (ECF Nos. 34, 35.) Thus, the parties' arguments concerning any unpaid salary (as opposed to the Regis equity) under the CWCA in their respective motions for summary judgment are denied as moot.

The parties' cross motions for summary judgment assert the Court can resolve the claims as a matter of law. The Court examines the arguments in turn to determine if it is so.

## II.     LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one–sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248.

When the court is presented with cross motions for summary judgment, it "must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *United States v. Supreme Court of New Mexico*, 839 F.3d 888, 906–07 (10th Cir. 2016) (citations and quotations marks omitted). "'Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.'" *Christian Heritage Academy v. Oklahoma Secondary School Activities Ass'n*, 483

F.3d 1025, 1030 (10th Cir. 2007) (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979)).

## III.  ANALYSIS

### A.  The Agreement

Regis' motion asserts there is no enforceable agreement because an essential term was not agreed to, namely, the terms of the "standard and customary release"; thus, Regis contends, there is only an agreement to agree.  Ms. Gruber's motion assumes there is an agreement, but Regis' response asserts there is only an agreement to agree or, alternatively, there was no meeting of the minds and Ms. Gruber was negligent in not inquiring as to the terms of Regis' "standard and customary release."  Ms. Gruber counters[5] that by Regis' evidentiary and judicial admissions, it has admitted that an enforceable agreement exists and cannot now argue otherwise.  These arguments require an analysis of federal law concerning the alleged admissions and Colorado[6] contract law.

#### 1.  Evidentiary and Judicial Admissions

"Judicial admissions are formal, deliberate declarations which a party or his attorney makes in a judicial proceeding for the purpose of dispensing with proof of formal matters or of facts about which there is no real dispute."  *Asarco, LLC v. Noranda Mining, Inc.*, 844 F.3d 1201, 1212 n.3 (10th Cir. 2017) (quotation marks and citation omitted).  Stipulations consisting of affirmative, formal, factual statements can be judicial admissions.  *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1097-1099 (10th Cir. 1991).  "A judicial admission must be deliberate, clear, and

---

[5] In response to Regis' motion and in reply to Regis' response.
[6] The Court assumes that Colorado law controls as it is a court sitting in diversity and that is the law the parties rely on in their papers.

unequivocal." *Skyline Potato Co. v. Rogers Bros. Farms*, No. 10-CV-02353-WJM-KLM, 2011 WL 2791531, at *5 (D. Colo. July 15, 2011) (citing *Matter of Corland Corp.*, 967 F.2d 1069, 1074 (5th Cir. 1992)); *Armstrong v. JPMorgan Chase Bank Nat. Ass'n*, 633 F. App'x 909, 912 (10th Cir. 2015) ("If unequivocal, judicial admissions are binding." (quotation marks, brackets, and citation omitted)).

"Admissions" on questions of law are ordinarily not binding. *First Amer. Title Ins. Co. v. Northwest Title Ins. Co.*, 906 F.3d 884, 893 (10th Cir. 2018). Further, judicial admissions are not absolute as they "may be withdrawn whenever necessary to prevent manifest injustice." *Wheeler*, 935 F.2d at 1098 (discussing stipulations).[7] Where "the party making an ostensible judicial admission explains the error in a subsequent pleading or by amendment, the trial court must accord the explanation due weight." *Smith v. Argent Mortg. Co.*, 331 F. App'x 549, 556 (10th Cir. 2009) (quotation marks and citation omitted). A district court has "broad discretion in determining whether to hold a party to a stipulation or whether the interests of justice require that the stipulation be set aside." *Id.*

Evidentiary admissions, on the other hand, "can be controverted or explained by a party, and such admissions include pleadings in another case, superseded or withdrawn pleadings in the same case, [and] judicial admissions in another case." *Asarco*, 844 F.3d at 1212 n.3 (quotation marks and citation omitted). The testimony of Rule 30(b)(6) representatives "is merely an evidentiary admission" and, therefore, does not have preclusive effect. *Vehicle Market Research, Inc. v. Mitchell, Int'l*, 839 F.3d 1251, 1260-61 (10th Cir. 2016).

---

[7] In *Asarco* the Tenth Circuit stated judicial admissions "are binding in the entirety of the case in which they were made." *Asarco*, 844 F.3d at 1212 n.3. That case did not, however, discuss whether a judicial admission may be withdrawn.

Ms. Gruber argues Regis' admissions that the Letter Agreement is an enforceable contract is found in four instances. The Court addresses them in turn.

First, Ms. Gruber argues that Regis' admission is found by its failure to argue in its motion to dismiss that the Letter Agreement is not a contract. Ms. Gruber fails to point the Court to any assertion in Regis' Rule 12(b)(6) papers which would constitute a deliberate, clear, and unequivocal statement that the Letter Agreement is an enforceable contract. Further, Ms. Gruber cites to no legal authority that if a party does not raise an argument in a Rule 12(b)(6) motion it constitutes a binding admission as to matters not raised. Thus, the Court rejects this argument as without legal or factual basis. *See* Fed. R. Civ. P. 12(b)(6) ("[A] party *may* assert the following defenses by motion…failure to state a claim upon which relief can be granted." (emphasis added)).

Next, Ms. Gruber asserts Regis' stipulation in the Scheduling Order that "Plaintiff and Defendant entered into a contract in November 2017, a copy of which is attached to the Complaint" constitutes an evidentiary admission that an enforceable agreement exists. Regis argues it did not stipulate the Letter Agreement was enforceable; its statement is not inconsistent with its argument that the Letter Agreement was an agreement to agree; and its motion to dismiss was then pending and its list of anticipated defenses was not exclusive (*see* ECF No. 17, p. 2 ("[a]mong the defenses Regis anticipates…")). Ms. Gruber relies on *Lopez v. Next Generation Constr. & Environmental, LLC*, No. 16-CV-00076-CMA-KLM, 2018 WL 4111027 (D. Colo. Aug. 29, 2018), but this case supports Regis' position. There, the *Lopez* court gave weight to the undisputed facts in the scheduling order where defendant's answer was filed *before* the scheduling orders were issued, and the facts were not subsequently disputed in the parties' final

8

pretrial order. Here, Regis' answer was filed after the scheduling order and disputed the enforceability of the Letter Agreement. Further, the Court takes judicial notice that the enforceability of the Letter Agreement was also disputed in the final pretrial order.[8] (ECF No. 42, pp. 3-4.) Accordingly, on this record, the Court agrees that Regis' undisputed facts do not constitute a binding admission which precludes it from challenging the enforceability of the Letter Agreement.[9]

Third, Ms. Gruber contends Regis' response to the requests for admissions constitutes a judicial admission. But, as Regis argues, those requests never asked Regis to admit the Letter Agreement was an enforceable contract. Instead, such requests were directed to matters within the Letter Agreement, e.g., requesting Regis to admit that, in order to receive compensation, Ms. Gruber had to receive and accept a job offer from TBG. Nor does the Court find the limited admissions Regis made in response to those requests constitute an admission that the Letter Agreement or its terms were enforceable. Thus, the Court finds this argument to be unavailing.

Finally, Ms. Gruber argues an evidentiary admission exists via Regis' Rule 30(b)(6) representative who confirmed the Letter Agreement is valid and binding. Regis asserts Mr. Testa's testimony was a legal conclusion to which Regis objected during the deposition. The Court agrees. Accordingly, based on the foregoing, Regis is not precluded from challenging the enforceability of the Letter Agreement.

---

[8] The final pretrial order was issued after completion of the briefing on the cross motions.
[9] As the parties consider this statement as an evidentiary admission, the Court will treat it as such. Even if the statement was a judicial admission, the Court finds Regis is not bound by such statement for substantially the same reasons and because it is not sufficiently deliberate, clear, and unequivocal.

## 2. Enforceability of the Letter Agreement

Regis raises two arguments as to why the Letter Agreement is not enforceable. Regis' motion argues the provision requiring the execution of a "standard and customary release" was an agreement to agree. Regis' opposition to Ms. Gruber's motion argues the Letter Agreement is only an agreement to agree and, alternatively, there was no meeting of the minds concerning the "standard and customary release." The Court starts with whether there was only an agreement to agree.

### a) Agreement to Agree.

"To create an enforceable and binding contract, all essential elements must be settled or a method of settlement must be agreed upon." *Carr Office Park, LLC v. Charles Schwab & Co.*, 291 F. App'x 178, 182 (10th Cir. 2008) (quoting *Greater Serv. Homebuilders' Inv. Ass'n v. Allbright*, 88 Colo. 146, 293 P. 345, 348 (1930)). If the writing leaves the agreement of the parties vague and indefinite there is no contract. *Id.* Similarly, if the parties merely "agreed to agree," i.e., to reach an agreement in the future, "such agreements are unenforceable because the court has no power to force the parties to reach agreement and cannot grant a remedy." *Griffin v. Griffin*, 699 P.2d 407, 409 (Colo. 1985). *See also New York life Ins. Co. v. K N Energy, Inc,* 80 F.3d 405, 409 (10th Cir. 1996) (same) (applying Colorado law). "To have an enforceable contract it must appear that further negotiations are not required to work out important and essential terms." *K N Energy*, 80 F.3d at 409.

Whether a contract exists is a question of fact only "where 'the evidence is conflicting or admits of more than inference.'" *K N Energy*, 80 F.3d at 409 (quoting *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 887 (Colo. 1986) (en banc)). To evaluate whether there

is an enforceable contract, the court determines: "a) if its terms are specific enough to constitute a contract; and b) if the parties intended it to be a binding contract." *K N Energy,* 80 F.3d at 410. *See also Gates Corp. v. Bando Chem. Indus., Ltd.*, 4 F. App'x 676, 682 (10th Cir. 2001) (same). To determine if the terms are specific enough, the court examines the four corners of the document. *K N Energy,* 80 F.3d at 411. If possible, the parties' intent is also to be determined from the face of the document. *Id.* at 409, 411. If the language in the document is ambiguous, the court may look at the surrounding circumstances to determine the parties' intent. *Id.* at 412.

The Court's review of the record shows the Letter Agreement was understood by the parties as a binding and enforceable agreement. This is evinced by the Letter Agreement's own provisions, which states that it is to "memorialize the agreement between" the parties, it was effective upon the closing of the sale to TBG on October 1, 2017, it has no effect after October 1, 2018, and it replaces "all prior agreements" regarding post-Closing severance and equity acceleration. (ECF No. 1-1, p. 2.) The provision requiring the execution of a "standard and customary lease" without setting forth the specific terms of this release does not render the Letter Agreement or that provision an agreement to agree. There is nothing in the Letter Agreement to indicate the parties anticipated they would conduct future negotiations to reach an agreement on such terms. Moreover, as addressed below, the term "standard and customary release" is specific enough to be binding. As such, Regis' request for summary judgment in its favor on the basis that the Letter Agreement is unenforceable is denied and, concomitantly, its assertion that summary judgment in favor of Ms. Gruber may not be had on this same basis is rejected.[10]

---

[10] That is not to say, however, such rejection results in summary judgment in favor of Ms. Gruber. She must still show she may be afforded relief on the claims asserted, an issue which the Court addresses hereafter.

### b)  *Meeting of the Minds*

Regis raises the lack of the meeting of the minds in its opposition to Ms. Gruber's motion for summary judgment, arguing this renders the Letter Agreement unenforceable.  Regis further argues Ms. Gruber's negligence in failing to know or discover the facts does not preclude rescission or reformation.  In reply, Ms. Gruber argues the parties did understand and agree upon the meaning of the term "standard and customary release" and, even if the parties did not, Regis cannot blame Ms. Gruber for any negligence or mistake.

"The general rule is that when parties to a contract ascribe different meanings to a material term of a contract, the parties have not manifested mutual assent, no meeting of the minds has occurred, and there is no valid contract."  *Sunshine v. M.R. Mansfield Realty, Inc.*, 195 Colo. 95, 98, 575 P.2d 847, 849 (1978); *see also Jorgensen v. Colorado Rural Properties, LLC*, 226 P.3d 1255, 1260 (Colo. App. 2010) (same).  "[A]n exception to the general rule is observed when the meaning that either party gives to the document's language was the only reasonable meaning under the circumstances.  In such cases, both parties are bound to the reasonable meaning of the contract's terms."  *Sunshine*, 575 P.2d at 849; *see also Jorgensen*, 226 P.3d at 1260 (same).

In this case, the evidence is undisputed the Letter Agreement does not address and there were no discussions concerning the terms of the "standard and customary release," including whether it would include a non-compete agreement and non-solicitation provision.  The evidence is also undisputed that Ms. Gruber testified she understood the "standard and customary release"

to mean she would waive her rights to sue Regis in the future.[11]  On the other hand, Mr. Testa testified the "standard and customary release" meant Ms. Gruber would sign an agreement in the form provided to her, i.e., the Separation Agreement.  (ECF No. 24-3, e.g., 37:18-9 to 39:11, 42:7-19, 43:5-17.)  Based on this record, the Court finds there is no triable issue of fact that there was no meeting of the minds as to the meaning of the term "standard and customary release."

The Court's inquiry, however, does not end here.  The question remains as to whether the meaning either party gave to the document's language was the only reasonable meaning under the circumstances.  The Letter Agreement stated Ms. Gruber would provide a "standard and customary release" which Ms. Gruber presumed meant only a release of any claims by her against Regis, such as the General Release in the Separation Agreement.  Regis contends that because Ms. Gruber was a vice president and subject to preexisting obligations to preserve confidential information and avoid conflicts of interest, such a presumption was not the only reasonable interpretation of the term.  And, further, Regis asserts, because of Ms. Gruber's position and agreement to the Code of Business Conduct and Ethics while employed by Regis, the "standard and customary release" was subject to other interpretations.  The Court disagrees.

Regardless of how the Court examines the Letter Agreement, the Court finds Regis' arguments fail.  Based on a four corners review of the Letter Agreement, Ms. Gruber's interpretation is the only reasonable one – that it requires only a release of claims.[12]  Moreover,

---

[11] Ms. Gruber's SUMFs stated that "A 'release' is a release of claims against a company."  (ECF No. 32 at ¶21.) That is what Mr. Testa testified to, but in the abstract. Although Ms. Gruber also testified "they [Regis] would do the same," the parties do not dispute that Ms. Gruber meant that *she* would release Regis. (ECF No. 24-7, 59:8-18.) Accordingly, the Court assumes it was understood as only a release by Ms. Gruber.

[12] It bears repeating the issue here is not, for example, the scope of such release that is disputed, e.g., whether it should release not only Regis but also its affiliates, shareholders, successors, and the like.  Here, both parties have no issue with the language in the General Release.  At issue is whether the "standard and customary release" could reasonably be interpreted to include provisions such as the non-compete and non-solicitation.

based on consideration of Regis' evidence, the Court finds such evidence insufficient to create a triable issue of fact as to whether this term meant a release other than as understood by Ms. Gruber and concludes, as a matter of law, that Ms. Gruber's meaning is the only reasonable interpretation of the term at issue. Therefore, the exception to unenforceability applies. Accordingly, Regis cannot defeat Ms. Gruber's claims (and, thus, her motion for summary judgment) based on the argument that there was no meeting of the minds.[13]

## B. Breach of Contract

To establish her breach of contract claim, Ms. Gruber must prove (1) the existence of a contract; (2) that she performed her duties under the contract or was excused from performance; (3) that Regis failed to perform the contract; and (4) resulting damages. *Long v. Cordain*, 343 P.3d 1061, 1067 (Colo. App. 2014) (citing *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)).

### 1. *"Job Offer"*

The parties' cross motions argue over whether Ms. Gruber received a job offer from TBG. Ms. Gruber asserts that "standard and customary" and "job offer" are unambiguous and then proceeds to analyze the words "release," "job," and "offer." The Court addresses "job offer" here as it has addressed "standard and customary release" above.

---

[13] As stated, Regis did not move for summary judgment on this basis. Regis' motion did argue, however, that the conditions for payment under paragraph 3 of the Letter Agreement were not met because Ms. Gruber would not sign the Separation Agreement, which it contends is Regis' "standard and customary release." Regis' citation to the Colorado Practice Series for Employment Law and Practice does not support its position. The book recognizes that "employers and employees often enter into agreements that the employee will release employment claims in exchange for severance pay or a settlement payment" and that these agreements "can also address how other matters will be handled, such as employment references, the return of company property, competition, non-disparagement and confidentiality." Such agreements, however, are "typically called severance or separation agreements." 16 Colo. Practice, Employment Law & Practice (3d ed.) § 18:1. The document at issue here, however, is a "standard and customary release."

The term "job offer" is undefined in the Letter Agreement and no party contends the term is ambiguous; the Court finds it is not. *City of Aurora v. ACJ P'ship*, 209 P.3d 1076, 1085 (Colo. 2009) (whether contract is ambiguous is question of law for the court). Ms. Gruber contends the term refers to an invitation from TBG for employment and because TBG asked if Ms. Gruber was interested in working for TBG (or interested in continuing with TBG in its premium salon division) she received a job offer from TBG. Regis, on the other hand, contends TBG's inquiry was not a job offer because TBG did not identify the specific position (title), the duties Ms. Gruber would perform, to whom she would be reporting, the location, the salary, the benefits, the start date, or any contractual arrangement. Ms. Gruber responds such details are neither required nor within the contemplation of the Letter Agreement and, further, such details were not required as Ms. Gruber rejected the alleged offer, i.e., she told TBG she was not interested.

"A contract consists of an offer and an acceptance of that offer, and must be supported by consideration." CJI-Civ. 30:1 (2019); *see also Sumerel v. Goodyear Tire & Rubber Co.*, 232 P.3d 128, 133 (Colo. App. 2009) (same). "An offer is a proposal to enter into a contract on the terms stated in the offer." CJI-Civ. 30:3 (2019). "The terms of the offer must be sufficiently definite that the promises and performances of each party are reasonably certain." *Watson v. Public Serv. Co. of Colo.*, 207 P.3d 860, 868 (Colo. 2008).

As used in the Letter Agreement, the term "job offer" clearly contemplates the offer must be capable of acceptance, i.e., the creation of an agreement. This is demonstrated by paragraph 2 which provides, in relevant part, "[i]f … TBG makes you a job offer and you *accept* the offer…" certain events will occur. (ECF No. 1-1, p. 2 (emphasis added).) It is also consistent with

reading the Letter Agreement as a whole. The undisputed material facts, however, show that no such offer was made. The alleged offer was not clear and definite and provided no key terms, such as salary and benefits or start date. Instead, there was only an inquiry by TBG as to whether Ms. Gruber would be interested in working with the TBG. The Court agrees that no genuine issue of material fact exists as to whether TBG made a job offer to Ms. Gruber which was capable of acceptance. On this issue, no reasonable factfinder could conclude that TBG made her a job offer.

### 2. *Breach of Contract – Paragraph 4*

Based on the finding that TBG never made Ms. Gruber an offer, paragraph 4 of the Letter Agreement was not triggered. Accordingly, Ms. Gruber's request for summary judgment for the alleged breach of paragraph 4 is denied. Concomitantly, Regis is entitled to summary judgment that the conditions to trigger the application of paragraph 4 of the Letter Agreement were not met; therefore, there was no breach by Regis of paragraph 4 and Ms. Gruber is not entitled to any payment thereunder.

### 3. *Breach of Contract – Paragraph 3*

Paragraph 3 of the Letter Agreement applies if TBG does not make Ms. Gruber an offer by the six-month anniversary of the closing, i.e., April 1, 2018. It is undisputed that after Ms. Gruber stated she was not interested in working for TBG, TBG announced Ms. Gruber was leaving and she was no longer working for TBG effective January 1, 2018. Thus, paragraph 3 was triggered. And, under paragraph 3, Regis was required to use "reasonable best efforts" to place Ms. Gruber in another position which was acceptable to both parties. If Regis was unable to do so, Regis would pay Ms. Gruber six months of her salary and accelerate the vesting of her

unvested equity awards and, in exchange, Ms. Gruber would execute a "standard and customary release."

Ms. Gruber contends Regis breached paragraph 3 in three ways. First, that Regis effectively terminated Ms. Gruber after three months, even though it was required to employ her for six months to determine if she would receive a job offer. Second, that Regis failed to use reasonable best efforts to place Ms. Gruber in another mutually acceptable position. And, third, that Regis refused to pay her the six months salary and accelerate her equity unless she executed the Separation Agreement.

The interpretation of a written contract is a question of law for the court. *DiFrancesco v. Particle Interconnect Corp.*, 39 P.3d 1243, 1247 (Colo. App. 2001). In construing a contract, the court looks to its terms and apply them as written unless they are ambiguous. *Pinnacol Assurance v. Hoff*, 375 P.3d 1214, 1222 (Colo. 2016) (citing *USI Props. E., Inc. v. Simpson*, 938 P.2d 168, 173 (Colo. 1997)). To determine if there is ambiguity, the court asks whether the contract's language "is reasonably susceptible on its face to more than one interpretation." *Id.* (quotation marks and citation omitted). If it is not ambiguous, the court must enforce the contract as written. *Id.* Whether an ambiguity exists in a written contract is also a question of law for the court. *Pinnacol Assurance*, 375 P.3d at 1229.

The Court's review shows, as Regis argues, that nothing in paragraph 3 or the Letter Agreement required Regis to employ – and pay a salary to – Ms. Gruber for six months after closing. Instead, the Letter Agreement, as relevant here, allowed Ms. Gruber up to six months to receive an offer from TBG. The plain language of the Letter Agreement does not lend itself to the interpretation Ms. Gruber seeks. Thus, the Court finds there was no breach of any

requirement to employ Ms. Gruber for six months or to pay her an additional two months' salary.[14]

Ms. Gruber's argument that Regis failed to use reasonable best efforts to place Ms. Gruber in another mutually acceptable position is also unavailing. It is undisputed that Ms. Gruber would only accept a job at Regis that involve running an entire division and Regis determined it did not have any opportunities that met this requirement she was seeking. Based on these undisputed material facts, no reasonable juror could conclude that Regis breached any duty to use its reasonable best efforts to place Ms. Gruber in a mutually acceptable position.

Ms. Gruber's final argument is another matter. Here, Ms. Gruber asserts Regis refused to pay her the six months' severance and accelerate her equity unless she executed the Separation Agreement, something not required under the Letter Agreement. Regis responds that Ms. Gruber was already obligated to abide by most of the provisions she objected to, e.g., a non-compete, and that, in her position while vice president, she had access to confidential financial and other sensitive information. Regis' response misses the mark.

The issue is what the Letter Agreement required – it required a "standard and customary release." The plain and ordinary meaning of this term does not include a non-compete, non-solicitation, or a confidentiality provision. That Ms. Gruber was subject to an agreement not to compete and the like *while she was employed by Regis* does not translate into a requirement that she must agree to do so *after she leaves such employment* under the guise of a "standard and customary release." Thus, the issue is whether Ms. Gruber performed or was excused from

---

[14] Regis employed, and paid, Ms. Gruber for four months, from October 1, 2017 through January 31, 2018. (*See* ECF No. 33-1, ¶ 57.) Ms. Gruber sought three months' salary in her motion, but even under Ms. Gruber's theory of six months of guaranteed employment, the most she would be entitled to would be an additional two months' salary. But, of course, the Court finds Ms. Gruber is not entitled to such additional salary.

performance and, resultingly, whether Regis' refusal to pay and accelerate the equity unless Ms. Gruber signed the Separation Agreement constitutes a failure to perform by Regis.

The "performance" required under a claim for breach of contract means "substantial performance." *McDonald v. Zions First Nat'l Bank, N.A.*, 348 P.3d 957, 965 (Colo. App. 2015) (quotation marks omitted) (quoting *W. Distrib. Co.*, 841 P.2d at 1058). "A party has substantially performed when the other party has substantially received the expected benefit of the contract." *Id.* (quotation marks and citation omitted). Ms. Gruber asserts that she complied with her obligations (i.e., performed) by being ready, willing, and able to execute a broad and comprehensive release in favor of Regis. Regis does not dispute that Ms. Gruber was willing to execute such a release. Based on the undisputed material facts, there is no triable issue that Ms. Gruber substantially performed under the Letter Agreement. Accordingly, Regis' failure to perform constitutes a breach of paragraph 3 of the Letter Agreement. Ms. Gruber is granted summary judgment on her second claim for breach of paragraph 3 of the Letter Agreement. Regis' request for summary judgment in its favor as to this claim based on paragraph 3 of the Letter Agreement is denied. Based on such breach, Ms. Gruber is entitled to six months of her salary and acceleration of the vesting of her Regis equity awards.

### C. The Wage Claim

Under the CWCA, "wages" or "compensation" means:

(I) All amounts for *labor or service performed* by employees, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculating the same or whether the labor or service is performed under contract, subcontract, partnership, subpartnership, station plan, or other agreement for the performance of labor or service if the labor or service to be paid for is performed personally by the person demanding payment. *No amount is considered to be wages or compensation until such amount is earned, vested, and*

*determinable,* at which time such amount shall be payable to the employee
pursuant to this article.

Colo. Rev. Stat. § 8-4-101(14)(a)(I)[15] (emphasis added).  "'Wages' or 'compensation' does not

include severance pay."  Colo. Rev. Stat. § 8-4-101(14(b).  Benefits are earned, vested, and

determinable when an employee has an enforceable right to receive payment for such benefits

pursuant to an employment agreement.  *See Barnes v. Van Schaack Mortg.*, 787 P.2d 207, 209

(Colo. App. 1990).

Ms. Gruber argues the Regis equity was compensation for "services performed" and not

severance, and its value was immediately ascertainable.  Regis counters that the Regis equity is

severance and was offered in exchange for the "standard and customary release" and not in

exchange for services performed.  The facts here are undisputed.  The parties entered into the

Letter Agreement with Ms. Gruber continuing as employee for Regis but reporting to TBG.

Regis continued to pay Ms. Gruber her salary and benefits.  Ms. Gruber effectively stopped

reporting to TBG on January 1, 2018 and was terminated by Regis effective January 31, 2018.

The Letter Agreement, considered as a whole and specifically as to paragraph 3, shows

the equity acceleration was not "wages" or "compensation" earned, vested, and determinable for

"labor or service performed" by Ms. Gruber.  First, the Letter Agreement states at the outset it is

intended to memorialize the agreement between the parties "regarding your potential *severance*

---

[15] Ms. Gruber also cites to Colo. Rev. Stat. § 8-4-101(14)(a)(II) which provides that "wages" and "compensation"
includes "[b]onuses or commissions earned for labor or services performed in accordance with the terms of any
agreement between an employer and employee."  The Court finds any argument that the equity acceleration under
the Letter Agreement was a bonus or commission is inadequately briefed and, therefore, waived.  Even if not
waived, the Court finds there is nothing in the Letter Agreement, or evidence in the record, to support a conclusion
that the equity acceleration constitutes a bonus or a commission.

during the post-Closing transition period."  (ECF No. 1-1, emphasis added.)  Next, the Letter

Agreement states that Ms. Gruber remains an employee of Regis while reporting to TBG, thus

continuing to receive her salary and other benefits unless other provisions are triggered

thereunder.  Third, the Letter Agreement intends the equity acceleration to occur upon the

*separation* of Ms. Gruber's employment with Regis.  Thus, acceleration occurs if TBG makes

Ms. Gruber an offer and she accepts; if TBG makes her an offer, she declines, and TBG is unable

to place her in a mutually satisfactory position; and if TBG makes her a job offer and she

declines.  Fourth, the equity acceleration is the same regardless of the length of time in which she

remained employed by Regis (subject to the six-month deadline), e.g., the same acceleration

occurred whether TBG made Ms. Gruber a job offer in November 2017 or February 2018.

Finally, under paragraph 3 (the only paragraph triggered in this case) Ms. Gruber was required to

provide a "standard and customary release" in "exchange" for the equity acceleration.[16]

The cases Ms. Gruber cites (but does not discuss or analyze) do not support a contrary

result.  For example, Ms. Gruber cites to *Montemayor v. Jacor Comm., Inc.*, 64 P.3d 916, 922-23

(Colo. App. 2002) for the proposition that "stock options *are* 'compensation' for purposes of the

CWCA,"[17] when the *Jacor* court stated that "stock options *may* be considered as compensation

under the CWCA."  64 P.3d at 922 (emphasis added).  The *Jacor* court found the "incentive

---

[16] The Court recognizes there is a dispute concerning whether the first sentence of paragraph 4 in the Letter Agreement requires Ms. Gruber to provide a "standard and customary release" as it does not expressly state so.  That sentence provides: "Furthermore, if TBG makes you [Ms. Gruber] a job offer and you decline, Regis will pay you severance equal to six months of your salary and the Acceleration."  But, paragraph 2 provides, in relevant part, "Regis will accelerate the vesting of your then-unvested Regis equity awards, in accordance with Regis' policy for Transferred Employees, in exchange for a standard and customary release (the "Acceleration")."  The Court finds it need not resolve this issue as it has found that paragraph 3 applies and the issue is whether the "payment" required by Regis to Ms. Gruber under paragraph 3 constitutes "wages" or "compensation" within the meaning of the CWCA.
[17] ECF No. 23, p. 13 (emphasis added).

stock options" at issue were compensation because the employment agreement 1) referred to Section 422 of the Internal Revenue Code (governing stock options granted in connection with an individual's employment); and 2) provided that, "in addition to compensation," "during" the employee's employment period she would be entitled "to such additional benefits, including … participation in stock option…, paid vacation, and holidays." 64 P.3d at 922-23. No such language can be found in the Letter Agreement.

Similarly, *Kennedy v. Leo Payne Broadcasting*, 648 P.2d 673 (Colo. App. 1982) is also unavailing. As the Colorado appellate court later explained in *Lee v. Great Empire Broadcasting, Inc.*, 794 P.2d 1032, 1035 (Colo. App. 1989), the agreement in *Kennedy* pursuant to which the employee's guaranteed salary was payable had expired before the employee was discharged; hence, the employee had earned all the guaranteed payment called for in the agreement as of the date of his termination. No such facts are found here. Accordingly, the Court finds that summary judgment should enter in favor of Regis on Ms. Gruber's claim under the CWCA based on the Regis equity award.[18]

## IV.    CONCLUSION

Based on the foregoing, it is **ORDERED**

(1) That the parties' respective Motions for Summary Judgment on the Plaintiff's First Claim for Relief under the Colorado Wage Claim Act for any alleged remaining salary for the alleged six-month term of the Letter Agreement are DENIED as moot;

---

[18] As stated in footnote 4, Ms. Gruber's claim under the CWCA based on an alleged remaining salary for the alleged six-month term under the Letter Agreement was dismissed earlier.

(2) That Plaintiff's Motion for Summary Judgment (ECF No. 23) is GRANTED in part and DENIED in part as stated herein;

(3) That Defendant's Motion for Summary Judgment (ECF No. 27) is GRANTED in part and DENIED in part as stated herein;

(4) That the Clerk shall enter judgment as follows:

    (a) That judgment shall enter in favor of Defendant and against Plaintiff on her First Claim for Relief for the alleged violation of the Colorado Wage Claim Act;

    (b) That judgment shall enter in favor of Plaintiff and against Defendant on her Second Claim for Breach of Contract for failure to pay six months' salary and accelerate 4,822 units of Regis equity, in violation of paragraph 3 of the Letter Agreement; and

    (c) That judgment shall enter in favor of Defendant and against Plaintiff on her Second Claim for Breach of Contract on all other bases raised thereunder; and

(5) That the Clerk shall close this case.

DATED this 21st day of August, 2019.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge